**James W. SCHOTT, Appellant,**

v.

**CITIZENS FIDELITY BANK AND TRUST COMPANY, Vincent J. Drexler; P.A. Vogel Company; Commonwealth of Kentucky; Commonwealth of Kentucky, ex-rel Division of Unemployment Insurance, Cabinet for Human Resources; Cheryl L. Drexler; and Liberty National Bank and Trust Company of Louisville, Appellees.**

**Cheryl L. DREXLER, Cross-Appellant,**

v.

**James W. SCHOTT and P.A. Vogel Company, Cross-Appellees.**

Court of Appeals of Kentucky.

June 28, 1985.

John M. Mayer, Jr., Hanger, Engebretson & Mayer, Clarksville, for appellant/cross-appellee.

M. Brooks Senn, Louisville, for Citizens Fidelity Bank and Trust Co.

Dana Kolter, Louisville, for Vincent Drexler.

A. Campbell Ewing, John G. Crutchfield, Ewen, MacKenzie & Peden, Louisville, for P.A. Vogel Co.

Ryan Halloran, Citizens Gen. Counsel, Frankfort, for Com., of Ky. Div. of Unemployment Ins.

David Armstrong, Atty. Gen., Frankfort, Stephen Swager, M. Dean Stewart, Louisville, for Liberty Nat. Bank.

August Klapheke, Louisville, for Drexler.

Before COMBS, MILLER and DUNN, JJ.

DUNN, Judge.

These consolidated appeals are from a judgment of the Jefferson Circuit Court distributing the proceeds from a commissioner's sale of real property in a consolidated case resulting from three separate suits concerning the real property in question.

Appellant, James W. Schott, contends that, as the owner of an undivided one-half interest in the property, he was entitled to one-half of the amount realized from the sale. Appellee/cross-appellant, Cheryl Drexler, on the other hand maintains that Schott's share of the proceeds should be reduced in proportion to improvements and repairs which she and her former spouse, Vincent Drexler, the owners of the other undivided one-half interest, had made to the property. Cheryl further contends that the trial court erred in overruling her motion to set aside its previous order distrib-

uting $8,260.10 of Vincent's share of the proceeds to appellee, P.A. Vogel Company, his judgment creditor. We affirm.

On January 22, 1971, James Schott and his wife (now deceased) and Cheryl and Vincent Drexler, then husband and wife, purchased as tenants in common the lot and house in question situated at 3306 Collins Lane in Jefferson County, Kentucky, with each couple acquiring an undivided one-half interest. To finance the purchase the Schotts and the Drexlers executed a note for $45,000.00 in favor of appellee, Citizens Fidelity Bank and Trust Company, secured by a mortgage on the real property and an adjoining tract owned solely by the Schotts. Shortly after the acquisition, the Drexlers took residence on the property. According to evidence presented by Cheryl Drexler, the two couples agreed that she and Vincent Drexler in recognition of their possessing the property began to pay two-thirds of the monthly installments on the mortgage and all premiums on homeowners insurance. In addition, Cheryl testified that with only a few exceptions, she and Vincent were wholly responsible for repairs and improvements made to the property.

During the early months of 1979, the Drexlers began to experience financial difficulties and sought Schott's consent to procure a second mortgage on the property. Schott agreed to do so, but only after the execution of a contract on February 29, 1979, which stipulated that the new second mortgage loan of $10,000.00 from Louisville Trust Bank was for the sole benefit of the Drexlers and set forth his rights against them should they ever be in default on the new indebtedness. For purposes of this appeal, the most important portion of this agreement was a clause stating that Schott had already paid one-half of the original mortgage of $45,000.00. Ultimately, however, Schott never had to enforce this contract as the Drexlers paid the new mortgage in full.

The parties continued to make payments on the original mortgage to Citizens Fidelity until April 1982. Approximately one

year earlier the Drexlers divorced resulting in Vincent becoming responsible for payment of the mortgage. After April, 1982, however, he ceased making the payments and in January, 1983, Citizens Fidelity filed the senior action with which we are here concerned, a foreclosure action against Schott and the Drexlers for the unpaid first mortgage balance of $9,951.19. Vincent's numerous other creditors, including appellee, Vogel, and appellee, Liberty National Bank and Trust Company, were named as defendants. Their respective suits on promissory notes against Vincent were later consolidated with Citizen Fidelity's senior action. After consolidation the trial court eventually ordered a commissioner's sale of the real property in question. At the sale it was purchased by Schott for $51,338.31. After the payment of the amounts owed and associated charges on the note and mortgage to Citizens Fidelity, a surplus of $36,322.36 remained to be divided among the other parties.

In its individual suit against Vincent Drexler and prior to its consolidation with the other instant cases on February 25, 1983, appellee, Liberty National Bank and Trust Company, procured a prejudgment attachment against Vincent in the amount of its claim on his promissory note for $10,000.00. Appellee, Vogel, earlier on January 17, 1983, had likewise procured a prejudgment attachment against Vincent on its separate suit on Vincent's promissory note in the amount of $7,281.94. It was recorded February 3, 1983.

On July 7, 1983, an order for summary judgment was entered in the consolidated case in Vogel's favor against Vincent for $7,281.94 plus interest relating back to January 27, 1983, the date of the prejudgment attachment. On November 1, 1983, Vogel sought and obtained an order of distribution from the trial court for its receiver to distribute to it $8,620.10 of the surplus from the sale held by the receiver. We have carefully examined the record and find that the only party objecting to this motion was Vincent Drexler who did so on the basis that the amount of this distribution would just about extinguish his eventual right to a homestead exemption.

Subsequent to that order the trial court issued findings of fact, conclusions of law and judgment, by which it attempted to determine the various parties' interest in the same surplus. Schott was found to have been an owner of an undivided one-half interest in the property and entitled to $18,161.18; both Cheryl and Vincent Drexler were determined to have been owners of an undivided one-quarter share and, therefore, entitled to $9,080.59 each, Vincent's share being subject to the claims of his creditors, including Cheryl's claim for child support arrearage.

The principal issue on both appeals is whether the trial court erred in determining the amount of the excess proceeds to which Schott was entitled. Schott for his part maintains that he should have been awarded $25,669.15, a sum constituting exactly one-half the amount realized at the commissioner's sale prior to any deductions to satisfy the mortgage to Citizens Fidelity. In support of this proposition he refers us to the contract of February 29, 1979, in which it is stated that he had already paid one-half of the Citizens Fidelity mortgage.

Cheryl, on the other hand, urges the reduction of Schott's share of the proceeds to $10,006.81 and the concomitant increase of her own and Vincent's portions. She believes this result is necessary on the basis of evidence she submitted that she and Vincent had actually made two-thirds of the mortgage payments to Citizens Fidelity and personally bore the cost of the bulk of the various repairs and improvements to the property. Under the rules of contribution as between cotenants and the equitable concept of melioration, she claims that the share of the proceeds received by herself, Vincent and Schott should be adjusted in recognition of these additional expenses. *See Rose v. Holbrook,* Ky., 287 S.W.2d 914 (1956); *Larmon v. Larmon,* 173 Ky. 477, 191 S.W. 110 (1917).

██ Despite these various legal arguments advanced by the parties, the supporting principles of which we do not question,

we regard the issue of the trial court's determination of their respective interests in the proceeds from the commissioner's sale as essentially one of fact. Consequently, CR 52.01 limits the scope of our review to an examination of whether the trial court's determinations are clearly erroneous on the basis of not being supported by substantial evidence. *Black Motor Co. v. Greene,* Ky., 385 S.W.2d 954 (1964).

Here there clearly is substantial evidence to support the trial court's findings concerning the share of the proceeds to which Schott and the Drexlers were entitled. Both Schott and Cheryl Drexler presented evidence to substantiate their claims. In its findings of fact, conclusions of law and judgment, after an extensive discussion of the conflicting evidence before it, the trial court exercised its authority under CR 52.02 and determined that neither Schott nor Cheryl was entirely correct in their assertions. The trial court within the frame of the evidence set the amounts which it believed should be awarded to Cheryl Drexler, Vincent Drexler and Schott. Under such circumstances, we cannot conclude that the trial court's conclusions on this issue are clearly erroneous and, hence, we affirm.

Finally, on her appeal Cheryl contends that the trial court erred in overruling her CR 60.02 motion to set aside its November 1, 1983, order of distribution and to order Vogel to return the excess over its pro-rata share.

We find no error in this regard for two reasons. First, the various judgments against Vincent are not entitled to recognition as liens against the property in question until steps have been taken to perfect a lien either through attachment or execution. *See Commercial Transport Corporation v. Robinson Grain Company,* 345 F.Supp. 342 (W.D.Ky.1972). In its separate action prior to consolidation Vogel obtained an order of pre-judgment attachment on January 17, 1983, notice of which was recorded February 3, 1983, and it is therefore entitled to a claim of lien as of February 3, 1983, the date of its notice, prior to Vincent's other creditor's. Assuming that Cheryl's judgment for the child support arrearage existed since April 24, 1981, the date of her decree, as she maintains, Vogel's judgment claim is superior to hers since she did not perfect a lien by attachment or execution as did Vogel.

Second, the determination to grant relief from a judgment or order pursuant to CR 60.02 is one that is generally left to the sound discretion of the trial court with one of the chief factors guiding it being the moving party's ability to present his claim prior to the entry of the order sought to be set aside. *Fortney v. Mahan,* Ky., 302 S.W.2d 842 (1957). Here the record discloses that Cheryl had such an opportunity. At the time that Vogel submitted its motion for the early order of distribution, Cheryl was a named party and represented by counsel. Furthermore, she was served with notice of that motion, but for some reason she chose not to make any objection until much later in the proceedings.

For either or both of these reasons, the trial court did not abuse its discretion in refusing to set aside its November 1, 1983, order of distribution.

The judgment of the Jefferson Circuit Court is therefore AFFIRMED.

All concur.