Robby D. DULL, Appellant,

v.

Loretta Y. GEORGE, Appellee.

No. 1997–CA–003115–MR.

Court of Appeals of Kentucky.

Nov. 20, 1998.

Mike Kelly, Louisville, Kentucky, for Appellant.

Louis I. Waterman, Louisville, Kentucky, for Appellee.

Before BUCKINGHAM, GUIDUGLI, and HUDDLESTON, Judges.

*OPINION*

BUCKINGHAM, Judge.

Robby D. Dull (Dull) appeals from a child custody decision of the Jefferson Circuit Court. Dull argues that the court erred by setting aside its prior award granting him sole custody of his child and by granting primary physical custody to the mother, Loretta Y. George (George). Having reviewed the record, the arguments of counsel, and the applicable law, we affirm.

Dull and George dated, but never married. Following the breakup of their relationship, George gave birth to a son, C., in November 1994. Dull eventually learned of the child's birth and petitioned the circuit court for custody. He was subsequently adjudged to be the child's father after paternity testing. During 1995 and 1996, Dull and George often went to court over visitation disputes. In August 1996, George, her parents, and the child moved from Louisville to Virginia without informing Dull of the move or their whereabouts. In September 1996, the court granted Dull temporary sole custody of the

child after George failed to appear at a contempt hearing. The court thereafter held a final custody hearing in December 1996 and awarded permanent custody of the child to Dull after George again failed to appear. After Dull eventually located George and the child in Virginia, a Virginia court recognized the custody order of the Jefferson Circuit Court and ordered George to return the child to Kentucky.

George filed a motion to set aside the judgment under Kentucky Rule of Civil Procedure (CR) 60.02.[1] The court granted the motion and held a permanent custody hearing with both parties presenting evidence. The court ordered joint custody, primary physical residence with George, and visitation for Dull. Dull appeals the order granting CR 60.02 relief and the final custody decision.

■ Dull argues that a court can only modify an order of sole custody by following the procedure described in Kentucky Revised Statute (KRS) 403.340. Pursuant to KRS 403.340(2), a court shall not modify a prior custody decree unless a change in the circumstances of the child or his custodian has occurred and modification is necessary to serve the best interests of the child. The party seeking modification must support his motion with at least two affidavits. KRS 403.340(1); *Copas v. Copas*, Ky.App., 699 S.W.2d 758, 759 (1985).

■ We find no error. George moved the court to set aside the previous custody judgment, not to modify it. Thus, KRS 403.340 does not apply. *See In re Marriage of Stuart*, 141 Ill.App.3d 314, 95 Ill.Dec. 770, 490 N.E.2d 243, 245 (Ill.App.Ct.1986) (statutory custody modification requirements not applicable to motion to vacate custody judgment under applicable Illinois civil rule). We are unaware of any cases which address the propriety of reopening a custody judgment pursuant to CR 60.02 under the circumstances of this case. Nevertheless, we believe a motion to vacate a judgment in a custody case may be proper under CR 60.02,

even where it would not be proper to modify it under KRS 403.340.

■ Dull also argues that the court abused its discretion under CR 60.02 when it reopened the case. We disagree.

■ The standard of review for relief under CR 60.02(f) is abuse of discretion. *Bethlehem Minerals Company v. Church and Mullins, Corp.*, Ky., 887 S.W.2d 327, 329 (1994). "Relief under CR 60.02(f) is available where a clear showing of extraordinary and compelling equities is made." *Bishir v. Bishir*, Ky., 698 S.W.2d 823, 826 (1985). The two factors for the trial court to consider in exercising its discretion are "(1) whether the moving party had a fair opportunity to present his claim at the trial on the merits and (2) whether the granting of CR 60.02(f) relief would be inequitable to other parties." *Bethlehem, supra; Fortney v. Mahan*, Ky., 302 S.W.2d 842 (1957).

The reason George gave for requesting relief from the orders granting temporary and permanent custody to Dull was that she did not have notice of the earlier custody hearings. Noting that George moved to Virginia without notifying Dull, the court, or her own attorney, the circuit court found that any lack of notice was a circumstance of George's own creation. However, the court noted that default judgments are not favored, and that the best interests of the child should govern the determination of child custody, giving each parent equal consideration. It granted George's motion under CR 60.02(f) and scheduled a full custody hearing.

We find no abuse of discretion. It is true that George had a fair opportunity to present her claim at the trial on the merits but chose to leave the state without notice. However, we find that granting CR 60.02(f) relief was not inequitable to Dull. *Bethlehem, supra.* By reopening the case, the court considered all available evidence. Dull was allowed to present his case and counter George's arguments.

■ Dull's final argument is that the court abused its discretion by awarding primary

---

**1.** CR 60.02 provides in relevant part: "On motion a court may, upon such terms as are just, relieve a party ... from its final judgment, order, or proceeding upon the following grounds: ... (f) any ... reason of an extraordinary nature justifying relief."

physical custody to George. He contends that the circuit court rewarded George for preventing Dull from forging a bond with C. We disagree.

The overriding consideration in any custody determination is the best interests of the child. *Squires v. Squires*, Ky., 854 S.W.2d 765, 768 (1993); KRS 403.270. The best interests standard applies equally when the child is born out of wedlock. *Basham v. Wilkins*, Ky.App., 851 S.W.2d 491, 493 (1993). Furthermore, the trial court possesses broad discretion in determining the child's best interests. *Squires, supra*, at 770.

The court heard testimony from the parties, their relatives and friends, a private investigator, and an evaluator appointed to conduct a home study. The evidence showed that Dull and George had a stormy relationship which ended before the child was born, that Dull was once jailed for physically assaulting George, and that Dull had a history of alcohol abuse. However, the evidence also showed that Dull cooperated with court-ordered psychological evaluations, and completed substance abuse, anger management, and parenting programs. At the time of the hearing, he was living in Owensboro with his parents, his girlfriend, his and his girlfriend's two children, and his girlfriend's child from another relationship. C. had lived with Dull for about six weeks before the hearing, but had encountered difficulty adjusting to his new surroundings. George and her older son were living with her parents in Virginia at the time of the hearing. Her mother cared for the children while George worked, and other relatives resided nearby. Evidence was presented that George had prevented Dull from seeing their son by means including her relocating to Virginia without notice.

The court also considered the report filed by psychologist Dr. Paula Barry, who evaluated the parties and interviewed members of their households. She found both Dull and George to be immature. She was impressed with Dull's efforts at self-improvement and found that he interacted appropriately with the child, but she expressed concern over his history of alcohol abuse and violent outbursts. Dr. Barry viewed George as a caring parent and noted that the child had a strong bond with George and her parents and that the visitation with Dull had been very upsetting for the child, but expressed concern over George's failure to cooperate with Dull's efforts to be a part of the child's life. Dr. Barry did not make a custody recommendation.

In its carefully considered and detailed Findings of Fact, Conclusions of Law, and Judgment, the circuit court concluded that C. should reside primarily with his mother, citing Dr. Barry's assessment that C. had bonded primarily with his mother and concern about Dull's history of physical violence. The trial court rejected sole custody for either party and decided upon joint custody to ensure that Dull would have the opportunity of developing a relationship with his son.

Findings of fact in a domestic relations case shall not be set aside unless clearly erroneous. CR 52.01; *Reichle v. Reichle*, Ky., 719 S.W.2d 442, 444 (1986). We find no clear error in any of the court's factual findings and no abuse of discretion in its custody decision. *Reichle, supra; Squires, supra.* We recognize that George prevented Dull from bonding with C. by her wrongful actions; however, the court properly decided custody based on the best interests of the child, without attempting to reward or punish either party.

For the foregoing reasons, the order of the circuit court is affirmed.

All Concur.